**Suzanne CAHNMANN, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**SPRINT CORPORATION, Defendant–Appellee.**

No. 97–2088.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1997.

Decided Jan. 7, 1998.

Robert J. Stein, III (argued), Krislov & Associates, Chicago, IL, for Plaintiff–Appellant.

David A. Shaneyfelt, Hoogendoorn, Talbot, Davids & Godfrey, Chicago, IL, Brant M. Laue (argued), Shank, Laue & Hamilton, Kansas City, MO, for Defendant–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

POSNER, Chief Judge.

Sprint, a communications common carrier regulated by the FCC, was sued by customers of Sprint's "Fridays Free" long-distance calling promotion in a class action originally filed in an Illinois state court. The suit was removed to federal district court, and judgment was soon entered for Sprint. The district judge ruled that although the complaint does not allege any violation of federal law and there is no diversity of citizenship, the suit was removable because the sort of claim that the class is making can arise only under federal, and not under state, law. Characterizing the federal claim as one to invalidate a tariff filed with the FCC, the judge gave judgment for Sprint on the pleadings, on the ground that he would be invading the FCC's jurisdiction if he invalidated the tariff.

In January 1996, Sprint had filed with the FCC a tariff setting forth the terms of a new service intended to attract long-distance customers to Sprint from other telephone companies. The tariff offered, to small businesses that agreed to subscribe to Sprint for a minimum of $50 in long-distance calls per month, up to $1,000 worth per month of free long-distance calls on Fridays to *anywhere in the world* for *one year*. Four months later, Sprint amended the tariff to delete ten countries, including Israel and China, from the offer of free Friday calling, although under the amended tariff customers receive a 25 percent discount off Sprint's regular rates for all calls (not just Friday calls) to nine of the countries (all but the Dominican Republic, for reasons not disclosed by the record).

The class members, several thousand in number, are "Fridays Free" customers who are continuing to call one or more of the ten countries and paying more, on balance, than they would have had to pay had the original tariff remained in force. Sprint claims to have had good reasons, having to do with congested phone lines and customer fraud (residential customers pretending to be small businesses), for amending the tariff. But there is no evidence on the issue, and for purposes of this appeal we assume that Sprint had no good reason for the amendment—or, worse, that it was planning from the start to renege on the offer of a full year of free Friday calls to anywhere in the world.

The first count in the complaint charges that Sprint broke its contract with its "Fridays Free" customers. It promised them the full year; it received consideration for the promise in the form of the minimum

monthly paid calls; it broke its promise. Q.E.D. The plaintiff acknowledges that Sprint might interpose as a defense that in reneging on its promise it was merely complying with the amended tariff; that the Communications Act requires a common carrier to comply with its tariffs, 47 U.S.C. § 203(c); *MCI Telecommunications Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 230, 114 S.Ct. 2223, 2231, 129 L.Ed.2d 182 (1994); and that the defense might therefore be a good one (though she thinks not). But she points out that a suit cannot be removed to federal court merely on the basis of a federal defense. *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 841, 109 S.Ct. 1519, 1521, 103 L.Ed.2d 924 (1989); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10–14, 103 S.Ct. 2841, 2846–49, 77 L.Ed.2d 420 (1983); *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir.1997).

◾ Public utility regulation and common carrier regulation (essentially the same form of regulation, the term "common carrier" being generally used of firms providing transportation or communications and "public utility" of firms providing electricity or gas) have been rolled back very far in recent years. But a piece of it survives in its pristine form in the provision of long-distance telephone service. The terms and conditions of service are set forth in "tariffs," which are essentially offers to sell on specified terms, filed with the FCC and subject to modification or disapproval by it. Once a tariff is filed and until it is amended, modified, superseded, or disapproved, the carrier may not deviate from its terms. *Lowden v. Simonds–Shields–Lonsdale Grain Co.*, 306 U.S. 516, 520, 59 S.Ct. 612, 614, 83 L.Ed. 953 (1939); *Keogh v. Chicago & Northwestern Ry.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49–50, 67 L.Ed. 183 (1922); *Norwest Transportation, Inc. v. Horn's Poultry, Inc.*, 23 F.3d 1151, 1153 (7th Cir.1994).

The original declared purpose of the tariff system was to prevent the utility or carrier from discriminating in price or service among its customers; a covert purpose was to discourage price competition by preventing secret discounts (tariffs are published documents). George W. Hilton, "The Consistency of the Interstate Commerce Act," 9 *Journal of Law and Economics* 87 (1966). These purposes are no longer widely supported, but the rule remains, vestige though it is: the carrier may not deviate from the terms of the tariff. It doesn't matter how eager both the carrier and its customers are to strike a special, off-tariff deal, *Maislin Industries v. Primary Steel, Inc.*, 497 U.S. 116, 130–31, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990), or even whether the customer reasonably relied on the carrier's promise to file the negotiated rate as a tariff. See *id.* at 124 n. 7, 110 S.Ct. at 2764 n. 7.

◾ What this means is that the filed tariff is the contract between the plaintiff (and the other members of the class) and Sprint. Or rather tariffs, since there were two. The plaintiff treats the first tariff, the one filed in January of 1996, as the contract between her and Sprint. If Sprint violated the tariff to her detriment, she would be entitled to proceed against Sprint under federal law. She could either seek reparations in an administrative proceeding before the FCC, or bring a suit for damages directly under the Communications Act, 47 U.S.C. §§ 206, 207; *Stiles v. GTE Southwest Inc.*, 128 F.3d 904, 907 (5th Cir.1997); *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1435 (3d Cir.1991), though if an issue arose in the suit concerning the validity of a tariff the court would have to interrupt the litigation and, pursuant to the doctrine of primary jurisdiction, compel the parties to resort to the FCC for a determination of that validity, after which the suit could resume if any other issues, such as relief, remained. *United States v. Western Pacific R.R.*, 352 U.S. 59, 63–65, 77 S.Ct. 161, 165–66, 1 L.Ed.2d 126 (1956); *City of Peoria v. General Electric Cablevision Corp.*, 690 F.2d 116, 120–21 (7th Cir.1982); *National Communications Ass'n, Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir.1995); *Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n, Inc.*, 965 F.2d 1118 (D.C.Cir.1992). Sprint would no doubt defend against the suit on the basis of the amended tariff, which it was duty-bound to comply with. The plaintiff would respond to this defense by asking the FCC to hold the

second tariff invalid because unreasonable, see, e.g., *Maislin Industries v. Primary Steel, Inc., supra,* 497 U.S. at 129 n. 10, 110 S.Ct. at 2767 n. 10, and that would be the setting in which Sprint's reasons for amending the original tariff would be ventilated and evaluated.

■ The plaintiff could thus have obtained all the relief to which she is entitled on the contract count—free calls to the ten countries for a full year, if her contract claim is sound—in a judicial or administrative or combined judicial and administrative proceeding under the Federal Communications Act. The issue is whether her federal remedy is exclusive or whether she can instead seek relief under Illinois' common law of contracts.

The Act does not say, and in fact contains a provision saving other remedies. 47 U.S.C. § 414. Although the provision is broadly written, if it were interpreted literally as permitting a state-law breach of contract suit regarding a tariffed service it would impair the Act's policy of confining telecommunications common carriers to tariffed services and vesting the FCC with primary jurisdiction to determine the validity of tariffs; indeed, it would effectively nullify the tariff provisions of the Communications Act. Such interpretations of savings clauses in common carrier statutes—interpretations that would empower state courts to gut the federal regulatory scheme or would place the carrier under inconsistent obligations—are therefore rejected. See, for the general proposition, *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 298–300, 96 S.Ct. 1978, 1984–85, 48 L.Ed.2d 643 (1976); *Pennsylvania R.R. v. Puritan Coal Mining Co.,* 237 U.S. 121, 129–30, 35 S.Ct. 484, 487, 59 L.Ed. 867 (1915), and *Texas & Pacific Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446, 27 S.Ct. 350, 357, 51 L.Ed. 553 (1907) ("the act cannot be held to destroy itself"), and for its application to section 414 of the Communications Act *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 997 (6th Cir.1994), and *MCI Telecommunications Corp. v. Garden State Investment Corp.,* 981 F.2d 385, 387–88 (8th Cir.1992). The plaintiff in effect wanted the state court to knock out Sprint's second "Fridays Free"

tariff on the ground that it violated the contract created by the original offer of the service and the plaintiff's acceptance of the offer. Such a procedure, bypassing the FCC, cannot have been the sort of thing intended by the savings provision, the proper operation of which is illustrated by *In re Long Distance Telecommunications Litigation,* 831 F.2d 627, 633–34 (6th Cir.1987). A carrier was accused of having represented that its rates were lower than a competitor's without revealing that, unlike the competitor, it charged its customers for their uncompleted calls. This was a claim of simple fraud, and its adjudication did not require determining the validity of a tariff.

■ But all that this analysis establishes is that the plaintiff cannot look to the savings provision as a source of a right to challenge the second tariff under state law. Left unresolved is whether the federal Act extinguishes the right to bring a suit for breach of contract under state law when the effect of the suit would be to challenge a tariff. We think the Act does extinguish that right—that it does not just provide a defense that the carrier might interpose in a suit under state law.

■ Remember that Sprint's tariff (either in its original form or as amended) is the contract. Any rights that the plaintiff has to complain about a breach of contract are rights granted to her by the original tariff and protected against the amendment by the principle of reasonableness that the FCC uses to determine the validity of a tariff (or, as here, an amendment to a tariff) when it is challenged. A tariff filed with a federal agency is the equivalent of a federal regulation, *Lowden v. Simonds–Shields–Lonsdale Grain Co., supra,* 306 U.S. at 520, 59 S.Ct. at 614; *Western Union Int'l, Inc. v. Data Development, Inc.,* 41 F.3d 1494, 1496 (11th Cir.1995); *MCI Telecommunications Corp. v. Garden State Investment Corp., supra,* 981 F.2d at 387, and so a suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law (both types of suit being comprehended in the plaintiff's contract count), arise under federal law. *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct.

1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam); *Louisville & Nashville R.R. v. Rice*, 247 U.S. 201, 38 S.Ct. 429, 62 L.Ed. 1071 (1918); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1093–96 (3d Cir.1995); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2d Cir.1968). (*MCI Telecommunications Corp. v. Credit Builders of America, Inc.*, 980 F.2d 1021 (5th Cir.1993), holds to the contrary, but is impossible to reconcile with Supreme Court authority—the court failed even to cite *Thurston* or *Rice*.) And since the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce. Federal law does not merely create a right; it occupies the whole field, displacing state law. See *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust, supra*, 463 U.S. at 23–24, 103 S.Ct. at 2853–54; *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992).

■ It is not as if the "Fridays Free" tariff had promised free calls and another provision of a contract between the plaintiff and Sprint had promised to sell the plaintiff a bushel of Ugli fruit at market price. If the promises were severable, *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1439 (7th Cir.1993); *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 81 (2d Cir.1996), the plaintiff could sue to enforce the latter promise, though not the former. There is no space between the contract and the tariff here, as there was, the Ninth Circuit found, in the arrangement between carrier and customer at issue in *Central Office Telephone, Inc. v. American Tel. & Tel. Co.*, 108 F.3d 981, 989–90 (9th Cir.1997), cert. granted, —— U.S. ——, 118 S.Ct. 622, 139 L.Ed.2d 507 (1997); and so there is no room for a state law claim of breach of contract. There probably was no room in *Central Office* either. The dissenting judge pointed out that AT & T was forbidden to offer nontariff services, so there could be no breach of contract claim based on the offer—because there could be no contract. 108 F.3d at 996. But that is a detail so far as the present case is concerned.

"[A]lthough a user's refusal to pay charges fixed by a tariff will often arise in the context of a broken contract, the carrier's claim for payment is necessarily based on the filed tariff." *MCI Telecommunications Corp. v. Garden State Investment Corp., supra*, 981 F.2d at 387. Equally, although a carrier's refusal to honor the terms of a tariff (in this case, the first "Fridays Free" tariff) will often arise in the context of a broken contract, the customer's claim for damages resulting from that refusal is necessarily based on the filed tariff, with the added wrinkle that to prevail the customer here had to knock out the second tariff, which she could do only under the Communications Act.

We do not think that *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), on which the plaintiff puts heavy weight, is inconsistent with our conclusion. True, that case, which the Supreme Court held arose under state law, is very similar to this one (it involved lifetime free passes); and the fact that it arose in the railroad industry rather than the communications industry is immaterial. But there is a crucial difference. The requirement that the carrier provide the service in question in accordance with tariffed terms didn't come into the law until after the contract between the railroad and the plaintiffs was made and went into effect, so the plaintiffs' claim couldn't have been thought an effort to enforce a tariff or an appeal to the regulatory commission's power to invalidate one. It was a state-law claim whether or not subsequently extinguished by the passage of the federal law putting the subject matter of the contract under tariff regulation.

■ Although in our case the claim of breach of contract can be maintained only under federal law, the plaintiff emphatically disclaims any intention of prosecuting a federal claim; and it might seem therefore that the district court could not acquire jurisdiction and so should have sent the case back to the state. But the only reason to do that would have been to permit the plaintiff to proceed in state court on her breach of contract claim. Yet we have just seen that this claim can be maintained only under federal

law. If on remand to the state court the plaintiff tried to press the claim in that court, she would be trying to litigate what could only be a federal claim, however denominated by the plaintiff, and so it would again be removable to federal court. The entry of judgment for the defendant was necessary and proper to end the cycle. This is an uncontroversial application of the "artful pleading" doctrine. See *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 611 (7th Cir.1997). If a claim can arise only under federal law, because federal law has extinguished the state law basis under which it might otherwise arise, the case is removable to federal court even if the plaintiff sedulously avoids mention of federal law in his complaint.

A separate question is whether the plaintiff's other counts, which charge fraud, can be said to arise under state law. If so, the district judge, when he dismissed the breach of contract claim on the ground that it could only be federal (and the plaintiff didn't want to remain in federal court to press a federal claim), should have relinquished jurisdiction over the fraud counts, now reconceived as supplemental state law claims to a federal claim dismissed before trial. 28 U.S.C. § 1367(c)(3); *Korzen v. Local Union 705*, 75 F.3d 285, 289 (7th Cir.1996); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir.1992). The plaintiff charges fraud under several Illinois fraud and consumer protection statutes as well as under the state's common law of torts, but there is no need to discuss the statutes separately. The charge is that Sprint misrepresented to prospective customers that the "Fridays Free" service would entitle them to a full year of free calls on Friday to any country in the world, rather than four months of free calls on Friday to any country in the world and eight months of free calls on Friday to any country in the world minus ten and a 25 percent discount on calls to nine of these countries any day of the week. It is not clear from the complaint whether the misrepresentation consists of a failure to disclose Sprint's right under the Communications Act to amend the tariff or a failure to disclose that Sprint never intended to keep the original tariff in force for a full year.

The principal relief sought is an injunction against continued misrepresentation, an injunction requiring Sprint to honor the promise in the original tariff, and compensatory damages. The request for an injunction against misrepresentation is a throwaway, since there is no suggestion that Sprint is concealing the terms of the amended tariff from any members of the class. With that put to one side, the relief sought by the fraud counts is identical to that sought by the contract count: the free calls promised in the original tariff. It seems, then, that in this case "fraud" is just another name for "breach of contract," so that to allow the plaintiff and her class to proceed in state court under state fraud law would allow the original tariff to be enforced, and the amended tariff set aside, in a suit under state law, which we just said is not allowed. Cf. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir. 1979); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 489–90 (8th Cir.1992); *Marco Supply Co. v. AT & T Communications, Inc.*, 875 F.2d 434, 436 (4th Cir.1989) (per curiam). It would be just another form of artful pleading, as we know from cases in other areas of law in which plaintiffs seek to avoid federal jurisdiction over contract claims by recharacterizing them as fraud claims. E.g., *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Anderson v. Humana, Inc.*, 24 F.3d 889 (7th Cir.1994).

This may seem a harsh conclusion. One can imagine Sprint making egregious misrepresentations to poor people ignorant of tariff regulation—promising for example a lifetime of free calls for an advance fee of $5,000, followed the next day by the filing of a tariff changing "lifetime" to "one month." But we know from *Maislin* that even reasonable reliance on a carrier's representation will not allow a suit complaining about the representation to be litigated under state law if the representation concerns a tariffed service. And the victims of Sprint's misrepresentation (if that is what it was) would still have a remedy, only under federal rather than state law, under the same provisions that authorize suits to enforce and to invalidate tariffs, see 47 U.S.C. § 204; *Western Union Telegraph*

*Co. v. FCC,* 815 F.2d 1495, 1501 (D.C.Cir. 1987); *American Broadcasting Cos. v. FCC,* 643 F.2d 818, 822 (D.C.Cir.1980)—which the hypothetical poor people's suit would be, just like the suit in this case of which our hypothetical is merely a hyperbolic variation. The plaintiffs could obtain damages and a reasonable attorney's fee, though not punitive damages. See 47 U.S.C. § 206. From a systemic standpoint the federal remedy is preferable, since class actions of thousands or perhaps even millions of telephone subscribers, litigated in state court under state law, could disrupt the federal regulatory scheme.

Once the plaintiff's claim was properly recharacterized as a challenge to the amended tariff, the doctrine of primary jurisdiction should have been invoked and the plaintiff told to repair to the FCC. But as it is plain that the plaintiff didn't want to do this, that she wanted to stand or fall on her claim that this is really a suit under state law, the district judge was right to enter judgment for Sprint rather than merely staying the suit to allow the parties to ask the Commission for a ruling on the reasonableness of the second, the amending, tariff.

AFFIRMED.