**Freedom Ring v. AT&T Corp.**          **CV-02-247-B**     **10/18/02**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Freedom Ring Communications, LLC</u>
<u>d/b/a BayRing Communications</u>

    **v.**                                        Civil No. 02-247
                                              Opinion No. 2002 DNH 189
<u>AT & T Corporation</u>


### <u>MEMORANDUM AND ORDER</u>


The plaintiff, Freedom Ring Communications LLC, d/b/a BayRing Communications ("BayRing"), filed suit against the defendant, AT&T Corporation ("AT&T"). BayRing seeks to collect fees (Count I) for telecommunications services allegedly provided to AT&T pursuant to tariffs filed with the Federal Communications Commission ("FCC") and the New Hampshire Public Utilities Commission ("PUC"). BayRing also seeks relief under state common law for unjust enrichment (Count II).

AT&T moves to dismiss Count II, arguing that it is barred by the filed rate doctrine. For the following reasons, I grant AT&T's motion to dismiss.

## I.  BACKGROUND[1]

BayRing operates a local exchange network, which provides switch access telecommunications services to long distance carriers, such as AT&T.  See Advamtel, LLC v. AT & T Corp., 118 F. Supp.2d 680, 681-82 (E.D. Va. 2000) (describing switch access services).  BayRing imposes fees upon long distance carriers in exchange for its switch access services.  The rates, terms, and conditions of these services are governed by the tariffs BayRing filed with the FCC and the PUC.[2]  See Compl. ¶¶ 8, 9, 15, 24.

In October 1998, BayRing began to provide switch access services to AT&T.  BayRing routinely billed AT&T for services rendered, however, AT&T only tendered partial payment.  Further, as of the billing period ending March 31, 2002, AT&T ceased payment of all bills submitted by BayRing.  BayRing also contends

[1]I accept as true the well-pleaded factual allegations of BayRing's complaint and draw all reasonable inferences therefrom in its favor.  See Martin v. Applied Cellular Technology, Inc., 284 F.3d 1, 6 (1st Cir. 2002).

[2]  Telephone communications carriers, such as BayRing, are generally required to file tariffs, which govern the rates, terms, and conditions of the services offered by the carrier. Tariffs are "essentially offers to sell on specified terms, filed with the FCC and subject to modification or disapproval by it." Cahnmann v. Spring Corp., 133 F.3d 484, 487 (7th Cir. 1998).

that the cost of switch access services is "built into AT&T's rates." Compl. ¶ 25. Thus, AT&T receives payment for the services from its customers, but refuses to pay BayRing for actually *providing* the services.

BayRing brings this suit to collect payment for services rendered under the rates, terms, and conditions of its filed tariffs. Alternatively, BayRing asserts that AT&T has been unjustly enriched by billing its customers for services provided by BayRing, while refusing to compensate BayRing for such services. Because it contends that it never ordered or authorized BayRing to provide switch access services, AT&T counters that it has no obligation to pay BayRing's fees.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin, 284 F.3d at 6. Dismissal is appropriate only if "it clearly appears, according

to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000) (quotation omitted).

## III. DISCUSSION

Both parties are well aware of my decision in A.S.I. Worldwide Communications Corp. v. Worldcom, 115 F.Supp.2d 201 (D.N.H 2000) ("A.S.I."). Thus, no purpose would be served in rehashing my analysis and application of the filed rate doctrine in that case. It is sufficient to state that because a filed tariff is "'the exclusive source of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff,' it necessarily displaces any state law basis for adjudicating those terms and conditions." A.S.I., 115 F.Supp.2d at 210-11 (quoting American Telephone and Telegraph Co. v. Central Office Telephone, Inc., 524 U.S. 214, 230 (1998) (Rehnquist, C.J., concurring; internal citations omitted). To determine whether Count II of BayRing's complaint is preempted under the filed rate doctrine, I must decide whether it seeks to enforce rights and/or duties that are inconsistent with or depend

upon BayRing's tariffs.  See A.S.I., 115 F.Supp.2d at 211.  Any such claims are preempted under the filed rate doctrine.  See id.

In Count II, BayRing alleges that "AT&T has already been compensated . . . without paying the corresponding charges to BayRing for the originating and terminating access services rendered."  Compl. ¶ 25.  It cannot be disputed that BayRing's "corresponding charges" and "access services" are wholly governed by the rates, terms, and conditions of its filed tariffs.[3]  See Compl. ¶ 8, 9, 24.  Therefore, in order to determine whether AT&T has been unjustly enriched, it is necessary to determine the rights and/or duties created by the filed tariffs.

BayRing argues that, because AT&T disputes the existence of a contractual relationship based upon the filed tariffs, this case falls outside the scope of the filed rate doctrine.  I disagree.  The filed rate doctrine turns upon an examination of the claim, not the asserted defenses to the claim.  Regardless of AT&T's allegations, BayRing's theory of unjust enrichment is

---

[3]  BayRing alleges that "[a]t all times relevant hereto," its rates, terms, and conditions for switch access services are contained in its filed tariffs.  See Compl. ¶¶ 8, 9  Therefore, for the purposes of this order, I accept these allegations as true.  See Martin, 284 F.3d at 6; Fed. R. Civ. P. 12(b)(6).

-5-

primarily founded upon the contention that AT&T failed to pay BayRing for services rendered under its filed tariffs. Cf. A.S.I., 115 F. Supp.2d at 212. Such a claim is barred under the filed rate doctrine.

BayRing also argues that the filed rate doctrine has been "fundamentally changed" by recent FCC rulings, which apparently allow certain communications carriers to enter negotiated agreements with other carriers in lieu of filing tariffs. Regardless of whether the application of the filed rate doctrine is altered in such circumstances, an issue which I need not discuss here, BayRing simply does not allege that a non-tariff based, negotiated agreement exists in this case. To the contrary, BayRing expressly states that the rates, terms, and conditions of its filed tariffs govern the contractual relationship between BayRing and AT&T.

Finally, BayRing discusses the interplay between the "constructive ordering" doctrine and the filed rate doctrine. While such a discussion may be pertinent in interpreting the terms of a tariff and whether a party has fulfilled its duties under those terms, see e.g., Advamtel, 118 F.Supp.2d at 684-85,

it is of no relevance in determining whether a state law claim - based upon a filed tariff - is barred by the filed rate doctrine.

## IV.  CONCLUSION

For the foregoing reasons, I reject the arguments offered by BayRing and find no principled basis upon which to distinguish this case from my analysis and application of the filed rate doctrine in A.S.I.  I grant AT&T's motion to dismiss Count II of BayRing's complaint (Doc. No. 9).

SO ORDERED

_____
Paul Barbadoro
Chief Judge

October 18, 2002

cc:  Stephen H. Roberts, Esq.
     Garry R. Lane, Esq.
     Michael J. Hunseder, Esq.