**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: NOS COMMUNICATIONS,
MDL No. 1357,

OLGA FISHER, d/b/a Fisher
Enterprises; HUDSON CAP
PARTNERS; KIDS INTERNATIONAL,
INC.; OMNIPURE FILTER COMPANY;
NATIONAL FOOD DISTRIBUTORS, INC.;
HONEYMOON PAPER PRODUCTS, INC.;
CTA RESEARCH CORPORATION;
SOUND TRAVEL,
          *Plaintiffs-Appellants,*
     and

PETER ENNS,
          *Plaintiff,*

     v.

NOS COMMUNICATIONS, MDL No.
1357; AFFINITY NETWORK
INCORPORATED, dba Quantumlink
Communications, Inc.,
          *Defendants-Appellees.*

No. 04-17040

D.C. No.
CV-01-00861-LDG

OPINION

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted
October 18, 2006—San Francisco, California

Filed July 10, 2007

8237

Before: J. Clifford Wallace, Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Wallace

**COUNSEL**

Robert S. Green, Green Welling LLP, San Francisco, California, for the plaintiffs-appellants.

Joseph A. Boyle and Danny E. Adams, Kelley Drye & Warren LLP, Parsippany, New Jersey, and Vienna, Virginia, for the defendants-appellees.

## OPINION

WALLACE, Senior Circuit Judge:

This appeal arises from Multidistrict Litigation. Plaintiffs are Olga Fisher; Hudson Cap Partners (Hudson); Kids International, Inc. (Kids); Peter Enns; Omnipure Filter Company (Omnipure); National Food Distributors, Inc. (National); Honeymoon Paper Products, Inc. (Honeymoon); CTA Research Corporation (CTA); and Sound Travel. They appeal from the district court's dismissal of their state law claims, claims under the Federal Communications Act (FCA), 47 U.S.C. § 151 *et seq.*, and claims under the Truth-in-Billing regulations. Sound Travel also appeals from the district court's denial of its motion to remand to state court. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

I.

NOS Communications, Inc. (NOS) and Affinity Network, Inc. (Affinity) are telecommunications companies offering interstate service. Plaintiffs were customers of and subject to NOS's and Affinity's federally filed tariffs.

Fisher alleges claims for state law fraud and deceit, as well as a claim under Nevada's consumer fraud statute, Nevada Revised Statute § 41.600. Damages are requested for the difference between the charges incurred at the rates billed by NOS and the charges incurred at the rates billed by its previous carrier, statutory damages, attorney's fees, and "other and further relief as the [c]ourt may deem just and proper."

National charges fraud regarding the rates and services under NOS's tariff. National's prayer for relief includes compensatory and punitive damages, but does not specify a method for calculating the damages.

Omnipure asserts claims under the FCA, 47 U.S.C. §§ 201(b) and 203(a), 47 C.F.R. § 61.2, and the Truth-in-Billing regulations, 47 C.F.R. § 64.2001 et seq. Hudson, Honeymoon, CTA, Kids, and Enns make essentially the same claims. In addition, Honeymoon alleges fraud, and CTA alleges intentional interference with contract. Kids and Enns assert state law claims for fraud, fraudulent inducement, breach of contract, and intentional infliction of emotional distress. The prayers for relief are varied, and include an order that NOS cease and desist its practices, compensatory damages, attorneys fees, mandatory arbitration, exemplary damages, punitive damages, and other necessary and appropriate damages. Honeymoon's complaint includes a measure of damages "no less than an amount equal to the difference between the charges incurred at the rates billed by [its] previous long distance carriers and the charges incurred after switching to NOS."

Sound Travel alleges a claim under the Washington Consumer Protection Act, requesting damages for economic loss caused by NOS's allegedly false and deceptive trade practices. It requests damages equal to economic loss caused by NOS's practices; attorney's fees and litigation expenses; treble, exemplary, or punitive damages; and prejudgment interest. NOS removed the action to federal district court, contending that federal jurisdiction existed under 28 U.S.C. §§ 1331, 1332, 1367, and 1441. The district court denied Sound Travel's motion to remand under 28 U.S.C. § 1447.

NOS and Affinity moved to dismiss plaintiffs' complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion against all plaintiffs and entered judgment, holding that all claims brought by the plaintiffs were barred by the filed-rate doctrine. This appeal followed.

## II.

[1] In 1934, Congress enacted the FCA, which required telecommunications carriers to file a list of tariffs with the

Federal Communications Commission (FCC) showing "all charges" and "the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). The purpose was to "prevent[ ] unreasonableness and discrimination in charges." *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 230 (1994). To ensure compliance with the tariff, "courts developed the 'filed rate doctrine,' which prohibited a regulated entity from charging rates for its services other than those specified in its duly filed tariff." *Ting v. AT&T*, 319 F.3d 1126, 1131 (9th Cir. 2003). Under the doctrine, "the rights and liabilities defined by the tariff could not be varied or enlarged by either contract or tort of the carrier," and federal law preempted state law claims seeking to enforce a rate that varied from the filed rate. *Id.* (internal quotation marks & citation omitted).

**[2]** The Telecommunications Act of 1996, Pub. L. No. 104-104, 100 Stat. 56, subsequently "detariffed" the regulatory scheme. *Id.* at 1132. The new regime went into effect in July 2001, however, after each of the plaintiffs had already filed its action. Since the filed rate doctrine was in force at the time the plaintiffs filed their actions, we apply the law as it stood when the doctrine was in force.

### III.

Plaintiffs argue that the district court erred in dismissing their claims under the FCA. The district court held that the FCA claims were nonjusticiable pursuant to the filed-rate doctrine. We review the district court's dismissal de novo. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond a doubt that [plaintiffs] can prove no set of facts in support of [their] claim[s] that would entitle [them] to relief." *Evanns v. AT&T Corp.*, 229 F.3d 837, 839 (9th Cir. 2000) (internal quotation marks & footnote omitted).

Under the FCA, every common carrier must file tariffs showing "all charges" and the "classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). The filed-rate doctrine "derives from the tariff-filing requirements of the [FCA]." *Evanns*, 229 F.3d at 840. We have described the filed-rate doctrine as follows:

> [O]nce a carrier's tariff is approved by the FCC, the terms of the federal tariff are considered to be the law and to therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer. Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff.

*Id.* (internal quotation marks & footnotes omitted).

**[3]** Plaintiffs argue that the "charges, practices, and regulations in Defendants' tariffs are unjust or unreasonable because their terms are not clear and do not contain explicit explanatory statements regarding the rates and regulations." This argument is foreclosed. *Brown v. MCI WorldCom Network Servs., Inc.*, held that "no one may bring a judicial challenge to the validity of a filed tariff," and that "[t]he filed-rate doctrine precludes courts from deciding whether a tariff is reasonable, reserving the evaluation of tariffs to the FCC." 277 F.3d 1166, 1170-71 (9th Cir. 2002); *accord Cahnmann*, 133 F.3d at 487. In *Brown*, the plaintiff's claims were justiciable only because the plaintiff sought to have the court interpret and *enforce* the terms of a tariff, not to challenge the filed tariff itself. 277 F.3d at 1171-72. We observed, however, that the filed-rate doctrine precludes courts from determining whether a tariff is reasonable. *Id.* at 1171.

**[4]** Plaintiffs are not helped by their citation of *Security Services Inc. v. KMart Corporation*, 511 U.S. 431 (1994). There, the Court held that the common carrier could not recover under the tariff because there was essentially no tariff on file. *Id.* at 440-41. That is not the case here. Defendants had a tariff on file that had been approved by the FCC. Plaintiffs' FCA claims were a direct challenge to the filed rate, and consequently barred by the filed-rate doctrine. Thus, we affirm the district court's dismissal of plaintiffs' FCA claims.

IV.

Sound Travel contends that the district court erred in denying its motion for remand. Sound Travel's complaint alleges only one legal claim: violation of the Washington Consumer Protection Act. In essence, Sound Travel alleges that NOS violated the Washington Consumer Protection Act by marketing false billing information and by failing to notify consumers of differences between the quoted price and the actual price. It seeks damages due to economic loss, reasonable attorney's fees and litigation expenses, and treble, exemplary and/or punitive damages. We review de novo the district court's denial of Sound Travel's motion to remand. *See Audette v. Int'l Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999).

**[5]** A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court. 28 U.S.C. § 1441(a), (b). Where, as here, no diversity of citizenship exists, a federal question is required for removal. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the

defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393.

**[6]** A corollary to the well-pleaded complaint rule is the "complete pre-emption" doctrine, which applies in cases in which "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal citations & quotation marks omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

We have not addressed whether federal law completely pre-empts state law claims in the area of interstate telecommunications. Other circuits, however, have addressed the issue.

**[7]** In *Marcus v. AT&T Corp.*, the Second Circuit held that complete preemption did not apply in the field of telecommunications. 138 F.3d 46, 54 (2d Cir. 1989). It reasoned that "[t]he limited applicability of the complete preemption doctrine [was] evidenced by the fact that the [Supreme] Court has only approved its use in three areas: (1) claims under the Labor Management Relations Act by a labor union against an employer under a collective bargaining agreement, but not claims arising from individual employment contracts, (2) [ERISA] suits by a beneficiary, but not suits by a state against an ERISA plan; and (3) certain Indian land grant rights." *Id.* (internal citations & quotation marks omitted). *Marcus* thus held "that federal common law does not completely preempt state law claims in the area of interstate telecommunications." *Id*.

In contrast, the Seventh Circuit stated that prior to detariffing, "the [FCA] completely preempted state law challenges

to the terms and conditions contained in a filed tariff." *Boomer v. AT&T Corp.*, 309 F.3d 404, 424 (7th Cir. 2002) (citing *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 489-90 (7th Cir. 1998)). *Cahnmann* held that plaintiff's state law claims for fraud, violation of state consumer protection statutes, and tort were thus removable to federal court. 133 F.3d at 490. It concluded that "[i]f a claim can arise only under federal law, because federal law has extinguished the state law basis under which it might otherwise arise, the case is removable to federal court even if the plaintiff sedulously avoids mention of federal law in his complaint." *Id.*

In *Cahnmann*, however, the Seventh Circuit confronted a situation where state law claims against a telecommunications provider involved a challenge to the filed rate or otherwise depended on the rate for damage calculations. *Id.* at 488-90. The state-law breach of contract and fraud claims challenged the "Fridays Free" portion of Sprint's filed rate. *Id.* at 486. The court concluded that the question before it was "whether the [FCA] extinguishes the right to bring a suit for breach of contract under state law when the effect of the suit would be to challenge a tariff." *Id.* at 488. In the "Fridays Free" instance, the tariff "defines the entire contractual relation between the parties;" therefore federal law "occupies the whole field, displacing state law." *Id.* at 489. Determining there was "no space between the contract and tariff," *id.*, the Seventh Circuit held that the FCA pre-empted all state law claims. Because *Cahnmann* did not confront an issue of a state law claim *not* touching on the tariff, we do not read the opinion as standing for blanket federal preemption in the telecommunications field.

**[8]** Moreover, there is no indication that Congress intended every state law cause of action within the scope of the FCA to be preempted. Congress adopted a savings provision, 47 U.S.C. § 414, which expressly states that "[n]othing in this chapter [ ] shall in any way abridge or alter the remedies now existing at common law or by statute." A savings clause is

fundamentally incompatible with complete field preemption; if Congress intended to preempt the entire field of telecommunications regulation, there would be nothing for section 414 to "save," and the provision would be mere surplusage. *See also Marcus*, 138 F.3d at 54 (stating that section 414 evidences Congressional intent to allow some state law claims to proceed). The Second Circuit's reasoning in *Marcus* is persuasive and we hold that complete preemption does not apply to federal regulation under the FCA.

**[9]** Unlike in *Cahnmann*, Sound Travel's claim under the Washington Consumer Protection Act at issue here can be maintained without reference to federal law. *Cf. Cahnmann*, 133 F.3d at 489-90 (holding that where the effect of contract action is to challenge tariff, the action arises under federal law). The relief sought under Sound Travel's claim would not necessarily require a setting aside of the filed tariff, or a renegotiation of its terms. *Cf. Cahnmann*, 133 F.3d at 490 (observing that allowing the fraud claims would "allow the original tariff to be enforced, and the amended tariff set aside, in a suit under state law"). Thus, we hold that complete preemption does not apply, and reverse the district court's denial of Sound Travel's motion to remand to the state court.

## V.

We next turn to the question of whether the district court erred in dismissing the state law claims of six plaintiffs based on the filed-rate doctrine: Fisher, CTA, Kids, Enns, National, and Honeymoon (collectively: state claim plaintiffs). They raise three arguments as to why the filed-rate doctrine is inapplicable, two of which can be disposed of easily.

**[10]** First, the state claim plaintiffs argue that the filed-rate doctrine does not apply because they seek to maintain their litigation as class actions. This argument implicates one of the coordinate justifications for the doctrine: the nondiscrimination principle. This principle holds that allowing a

state court to bind a provider to a rate that was neither filed nor found to be reasonable would "undermine the congressional scheme of uniform rate regulation." *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 579 (1981) (applying filed-rate doctrine to natural gas tariffs). In *Marcus*, the Second Circuit observed that "the Supreme Court has rejected the suggestion that the development of class actions, which might alleviate the . . . concern about nondiscrimination, made the nondiscrimination principle [of the filed-rate doctrine] inapplicable to a putative class action." 138 F.3d at 61 (internal quotation marks & alterations omitted) (citing *Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 423 (1986)). We join the Second Circuit in rejecting the argument that the filed-rate doctrine is inapplicable to class actions.

**[11]** Second, state claim plaintiffs contend that the subsequent "detariffing" by the FCC make the filed-rate doctrine inapplicable here. But the detariffing occurred in July 2001, which was well after each of the plaintiffs had filed its action. State claim plaintiffs do not contend that their claims arose after this date. Thus, we reject this argument.

Of more significance is state claim plaintiffs' next contention: that the nature of their state law claims make the filed-rate doctrine inapplicable. They argue that the district court erred in dismissing those claims under the filed-rate doctrine because the state law claims do not challenge the reasonableness of the filed-rate. They further contend that the filed-rate doctrine is inapplicable to the extent that they allege damages without reference to the filed-rate.

We recognize that some state law claims are indeed preempted by the filed-rate doctrine. In *AT&T Co. v. Central Office Telephone, Inc.*, for example, the Supreme Court held that state law claims that were "wholly derivative of the contract claim for additional and better services" were preempted by the filed-rate doctrine. 524 U.S. 214, 226 (1998); *cf. Ark. La. Gas Co. v. Hall*, 453 U.S. at 583 n.13 ("We save for

another day the question whether the filed rate doctrine applies in the face of fraudulent conduct") (applying the filed-rate doctrine for natural gas). In *Central Office*, the tort claim at issue "stem[med] from the alleged failure of AT&T to comply with its contractual relationship." 524 U.S. at 226 (internal quotation marks and alterations omitted); *cf. In re Long Distance Telecomms. Litig.*, 831 F.2d 627, 633 (6th Cir. 1987) (holding that state law claims for fraud and deceit were *not* preempted by the FCA, where the claims "do not require agency expertise for their treatment and are within the conventional experience of judges") (internal quotation marks omitted).

Similarly, in *Evanns*, we held that the filed-rate doctrine barred state claims that the communications carrier had a "duty to disclose" a fee that was included in the carrier's tariff. 229 F.3d at 840-41. *Evanns* concluded that "the filed rate doctrine bars all claims — state and federal — that attempt to challenge the *terms* of a tariff that a federal agency has reviewed and filed." *Id.* at 840 (quoting *County of Stanislaus v. Pac. Gas & Elec. Co.*, 114 F.3d 858, 866 (9th Cir. 1997)) (internal quotation marks and alterations omitted; emphasis added).

We have also concluded that the measure of damages sought sometimes indicates that the filed-rate doctrine applies. *See, e.g., Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1087 (9th Cir. 2004); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 933 (9th Cir. 2002) (as amended). In *Verizon*, we rejected Verizon's state law claims because its damages were "in effect [ ] seeking an increased rate" than that contained in the filed tariff. 377 F.3d at 1087.

Similarly, in *Transmission Agency*, we considered whether the filed-rate doctrine, as applied to interstate electricity, preempted certain fraud claims. 295 F.3d at 933. We were careful not to suggest "that in every case . . . a plaintiff could not

possibly demonstrate damages from fraud committed before the state utility commission without implicating the filed rate doctrine." *Id.* We stated that the claim at issue failed, however, because plaintiff did not "present a model of damages that does not [implicate the filed-rate doctrine]." *Id.* Preemption generally applies where the damages are measured by comparing the filed-rate with the rate that allegedly should have been charged. *Id.*, *see also Cahnmann*, 133 F.3d at 486-490 (holding that preemption applied where the "relief sought by the fraud counts is identical to that sought by the contract count").

**[12]** We hold that the state law claims are preempted to the extent that they attempt to challenge the terms of the filed-rate doctrine. Further, where the measure of damages requires comparing the rates charged under the filed-rate with the rate that allegedly should have been charged, the state claims are preempted. However, to the extent that state claim plaintiffs assert claims that neither attack the rates nor require reference to the filed-rate for a calculation of damages, we hold that the filed-rate doctrine is inapplicable.

Applying this test, we turn to the claims before us. We hold that the claims of intentional infliction of emotional distress, fraud, fraudulent inducement to switch contracts, intentional interference with contract, and claims under the Washington Consumer Protection Act and Nevada Consumer Fraud Statute are not preempted by the filed-rate doctrines. These claims do not necessarily require a determination of the validity or reasonableness of the tariffs. To the extent that the state claim plaintiffs can prove damages without attacking the filed-rate, these claims are not preempted. For example, injunctive relief or consequential damages flowing from lost profits might be assessed without reference to the rates. In contrast, damages based on the difference between what NOS and Affinity charged, at the filed-rate, and what state claim plaintiffs' previous carrier charged, are precluded.

**[13]** Accordingly, we hold that the district court improperly dismissed all the state law claims asserted by Fisher, CTA, and Honeymoon. We observe that Fisher's measure of damages included the difference between the charges incurred at the rates billed by NOS and the charges incurred at the rates billed by its previous carrier, which we hold is preempted by the filed-rate doctrine. But insofar as Fisher (as well as the other state claim plaintiffs) can prove damages that do not refer to the filed-rate, its state law claims may proceed. We reverse and remand these claims to the district court.

**[14]** We need not reach the Sound Travel claim as it is ordered remanded. Kids' and Enns's claims for fraud, fraudulent inducement, and intentional infliction of emotional distress were also improperly dismissed. All of National's state law claims were improperly dismissed, except the claim that "NOS systematically breached its duty to the Class to exercise reasonable care," which we address below. We reverse the dismissal of these claims, and remand to the district court.

**[15]** We hold that the remaining state law claims were properly dismissed by the district court. Kids and Enns pleaded a breach of contract claim, stating that defendant's actions "constitute a breach of the contract between the parties." National also alleges that NOS "systematically breached its duty to the Class to exercise reasonable care, including its duty to exercise reasonable care in disclosing its billing rates." In both instances, the rights and duties of the parties are governed by the contract between them. That contract is the filed rate. *See Evanns*, 229 F.3d at 841 ("that the defendant carriers had obligations . . . *beyond those* set out in the filed tariffs . . . is also barred by the filed-rate doctrine.") (internal quotation marks omitted). Since these claims "stem from the alleged failure of [NOS] to comply with its contractual relationship," *Central Office*, 524 U.S. at 226, they are preempted by the filed-rate doctrine. The claims relating to breach of contract and breach of the duty of reasonable care were properly dis-

missed by the district court, and we affirm the district court's dismissal of these state law claims.

## VI.

Omnipure, Hudson, Honeymoon, Kids, and Enns advance claims under the Truth-in-Billing requirements, but concede that they did not receive any bills from NOS after the effective date of the Truth-in-Billing regulations. Thus, we must first determine whether the Truth-in-Billing regulations should be applied retroactively.

In *Landgraf v. USI Film Products*, the Supreme Court provided a framework for determining whether a statute should be applied retroactively:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. 244, 280 (1994).

**[16]** Applying these principles to the present case, we hold that the Truth-in-Billing regulations should not be applied retroactively. The regulations state in part:

> The purpose of these rules is to reduce slamming and other telecommunications fraud by setting standards

for bills for telecommunications service. These rules are also intended to aid customers in understanding their telecommunications bills, and to provide them with the tools they need to make informed choices in the market for telecommunications service.

47 C.F.R. § 64.2400(a). Nothing in the language indicates a clear congressional intent favoring retroactivity. In addition, the regulation imposes new duties with respect to transactions already completed. For example, it requires, among other things, that telephone bills contain a clear description of charges. 47 C.F.R. § 64.2401(b). The district court was correct in holding that the Truth-in-Billing regulation cannot be retroactively applied, and we affirm the district court's dismissal of the Truth-in-Billing claims asserted by Omnipure, Hudson, Honeymoon, Kids and Enns. *Cf. Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 835 (9th Cir. 1997) ("[T]he courts disfavor retroactivity. Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result") (quotation marks, alteration, & punctuation omitted).

**[17]** CTA's claim under the Truth-in-Billing regulation, in contrast, does not rest on retroactive application of the regulation. The district court dismissed the claim, however, on the ground that it was nonjusticiable under the filed-rate doctrine. We reverse the district court's dismissal of CTA's Truth-in-Billing claim. Like the state law claims discussed above, adjudication of this claim does not rest on a determination of the reasonableness or validity of the filed tariff. Instead, the question is whether NOS sent bills that were clear and nonmisleading, as required by the regulation. *See* 47 C.F.R. § 64.2401(b). The calculation of damages for violation of the regulations does not necessarily depend on the filed-rate. Thus, we reverse the district court's dismissal of this claim and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**