In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2037

NORTHEASTERN RURAL ELECTRIC
MEMBERSHIP CORPORATION,

*Plaintiff-Appellant*,

*v.*

WABASH VALLEY POWER ASSOCIATION, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00144-SEB-DML—**Sarah Evans Barker**, *Judge.*

ARGUED SEPTEMBER 25, 2012—DECIDED FEBRUARY 22, 2013

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal tests the
boundaries of federal-question subject matter jurisdic-
tion. The issue is whether a claim for breach of a long-
term requirements contract for wholesale electricity
arises under federal law or state law. We conclude that
the claim arises under state law, that the district court

therefore lacked jurisdiction to enter its preliminary injunction, and that the case should be remanded to state court.

Defendant Wabash Valley Power Association, Inc. (Wabash Valley) is a not-for-profit power generation cooperative. Plaintiff Northeastern Rural Electric Membership Corporation (Northeastern) is a member of Wabash Valley that purchases electricity from Wabash Valley and resells it to consumers. In 1977, Northeastern and Wabash Valley entered into a wholesale power supply contract under which Northeastern agreed to purchase all of its electric power from Wabash Valley for the next forty years. The contract provided that Northeastern would pay for the electricity at rates to be set by the Wabash Valley board of directors "[s]ubject to the approval of the Public Service Commission of Indiana," though the key contractual provision also stated that revised rates would not be effective unless approved by the ambiguously phrased "applicable regulatory authorities," as well as the administrator of the federal Rural Electrification Administration.

On January 5, 2012, Northeastern filed this suit in Indiana state court seeking a declaratory judgment that Wabash Valley materially breached the 1977 contract by taking action in 2004 that had the effect of transferring regulation of its rates from the Indiana Commission to the Federal Energy Regulatory Commission

(FERC).[1] Northeastern contends that the "applicable regulatory authorities" in the 1977 contract are limited to the Indiana Commission, while Wabash Valley believes that the contract language is flexible enough to permit rate regulation by either regulatory body.

Wabash Valley removed the case to federal court under 28 U.S.C. § 1441(a) on the theory that the claim for breach of contract necessarily arises under the Federal Power Act (FPA), 16 U.S.C. §§ 791a *et seq*. Northeastern moved to remand to state court while Wabash Valley moved for a preliminary injunction to prevent Northeastern from ceasing performance under the contract. The district court denied Northeastern's motion for remand and granted Wabash Valley's motion for a preliminary injunction, agreeing with Wabash Valley that federal jurisdiction exists because Northeastern's suit is "a collateral attack on the FERC-filed rate," and thus raises a question of federal law. Northeastern has appealed both rulings, arguing that the suit does not attack a filed rate.

We have appellate jurisdiction to consider the preliminary injunction under 28 U.S.C. § 1292(a)(1). The appeal of the district court's denial of remand also fits within the narrow doctrine of pendent appellate jurisdiction because the preliminary injunction appeal presents pre-

_____

[1] In 1987, the Public Service Commission of Indiana was renamed the Indiana Utility Regulatory Commission. We refer to this continuing regulatory body as simply "the Indiana Commission."

cisely the same question of subject matter jurisdiction as
the motion to remand. The denial of a motion to remand
ordinarily cannot be appealed, see 28 U.S.C. § 1447(d),
but here the denial of remand is "inextricably inter-
twined" with the appealable preliminary injunction. See,
*e.g.*, *Research Automation, Inc. v. Schrader-Bridgeport Int'l,
Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (exercising pendent
appellate jurisdiction over non-appealable transfer
order that presented same issue as appealable denial of
injunction to block litigation in transferee district); cf.
*Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 669 (7th
Cir. 2012) (holding that appellate jurisdiction over denial
of motion to dismiss based on foreign sovereign im-
munity defense did not support pendent appellate juris-
diction over rejection of separate statute of limitations
defense).

Turning to the merits of the appeal, we agree with
Northeastern and conclude that the federal courts lack
subject matter jurisdiction over this case. North-
eastern's claim is limited to a construction of the parties'
rights under the 1977 contract and does not necessarily
raise a question of federal law. To prove its claim, North-
eastern needs to show only that it had a valid contract
and that Wabash Valley's voluntary action to transfer
regulatory jurisdiction from the Indiana Commission
to FERC breached the contract. Neither of these elements
necessarily raises a question of federal law. While North-
eastern may eventually attempt to use a favorable state
court judgment to seek FERC's permission to terminate
its obligations under the tariff filed with FERC, North-
eastern agrees that such relief cannot be achieved in

this suit. If Northeastern prevails on the merits of its claim, it will then need to seek that relief directly from FERC. Northeastern has therefore pled a claim that does not arise under federal law. We vacate the preliminary injunction and order remand of this action to state court.

I.  *Regulatory, Factual, and Procedural Background*

A.  *Wholesale Electrical Power Regulation*

Regulation of the electricity market is divided between federal and state regulators. In general, the federal government through FERC regulates the interstate wholesale electricity market, while the states regulate the retail sale of this power to consumers.

FERC regulates the sale of wholesale electricity through rate regulation. Under the Federal Power Act, public utilities under FERC jurisdiction may charge only "just and reasonable" rates. 16 U.S.C. § 824d(a). The Act grants FERC the exclusive authority to enforce this provision by regulating the rates, terms, and conditions governing the interstate transmission and sale of wholesale energy in interstate commerce. See *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 371 (1988). In practice, FERC enforces this statutory provision through tariff filing. Public utilities regulated by FERC are required to file tariffs that detail rates and terms of service. 16 U.S.C. § 824d(c); 18 C.F.R. § 35.1(a). The basis for the filed tariff is often a contract negotiated privately between wholesaler and distributor that

is then submitted to FERC. FERC will then accept the contract as the basis for the rate as long as the terms are "just and reasonable" and not discriminatory. Once a rate is filed, the rate takes effect unless FERC initiates a hearing to inquire into the reasonableness of the rate. 16 U.S.C. § 824d(e). If a utility or customer is unhappy with a proposed term, it may protest the rate filing with FERC or seek to intervene in any proceedings. 18 C.F.R. § 385.211(a) (establishing general rule that "[a]ny person may file a protest to object to . . . [a] tariff or rate filing"); 18 C.F.R § 385.214 (requirements for intervention). An aggrieved party may seek judicial review before a federal court of appeals within 60 days. 16 U.S.C. § 825*l*(b). Once a rate is accepted, however, the parties to the rate filing are bound to the terms of the filed rate and may not change them without giving notice and making a new filing with FERC. 16 U.S.C. § 824d(d); 18 C.F.R. § 35.15 (requiring notice and filing with FERC to cancel or terminate a rate schedule). This process provides the exclusive method for reviewing the reasonableness of the terms of filed rates.

FERC's exclusive jurisdiction over the reasonableness of rates under its jurisdiction is protected by the "filed-rate doctrine." The filed-rate doctrine prohibits courts — both state and federal — from questioning a rate that has been filed with a federal regulator, except through the review process just noted. See *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251-52 (1951). The doctrine has been expanded to include the terms of the tariff that affect the rate and state regulations that might indirectly achieve the same

result. See *Natural Gas Co. v. State Corporation Comm'n of Kan.*, 372 U.S. 84, 91 (1963) (applying doctrine to bar state order allocating purchases among numerous wells in same gas field). By this reasoning, if Northeastern had brought this action as a suit for damages or to enjoin the rate it pays under the filed tariff, the action would be barred by the filed-rate doctrine. An award of damages would require a court to determine that the rate paid was unreasonable, and any damages paid in such a suit would effectively alter the rate Northeastern paid for electricity under the FERC tariff during the period in question.

FERC would have had regulatory authority over the original 1977 Northeastern-Wabash Valley contract but for a relevant exception to FERC's jurisdiction. While the Federal Power Act generally grants FERC exclusive jurisdiction over the regulation of wholesale power, FERC lacks jurisdiction over utilities that are regulated by the Rural Electrification Administration (REA), an agency that has promoted rural electrification by providing loans for infrastructure development. See *Dairyland Power Cooperative*, 37 F.P.C. 12 (1967) (interpreting 16 U.S.C. § 824(f) to hold that FERC predecessor, the Federal Power Commission, lacked jurisdiction over wholesale rates charged by power cooperatives financed by REA); *Salt River Project Agricultural Improvement & Power District v. FPC*, 391 F.2d 470, 474-77 (D.C. Cir. 1968) (agreeing with FPC's holding in *Dairyland Power*); see also *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 903 F.2d 445, 448 (7th Cir. 1990) (noting the *Dairyland Power* rule). Unlike FERC, the REA does

not have exclusive jurisdiction over the regulation of wholesale electric rates. This means that state regulators may have jurisdiction to regulate wholesale power companies that are financed by the REA.

B.  *The 1977 Contract*

In 1977, Northeastern and Wabash Valley entered into a wholesale power supply contract. Wabash Valley was within the REA's jurisdiction at that time due to outstanding REA debt, so state rate regulation was permissible. See generally *Wabash Valley Power Ass'n, Inc. v. Rural Electrification Admin.*, 988 F.2d 1480 (7th Cir. 1993). The contract provided that Northeastern would purchase all of its electric power and energy from Wabash Valley for the next forty years.[2] Since future price is uncertain, such long-term contracts typically specify a procedure for changing the rate over time. The 1977 contract provided for the rate to be changed in the following manner:

---

[2]  The original contract has been amended a number of times to alter the duration of the contract term and to provide alternative avenues for Northeastern to terminate its dealings with Wabash Valley. Because Northeastern is alleging a breach of the 1977 contract, and because we conclude that this claim is not subject to federal court jurisdiction, we do not address the significance of these amendments. Whether such amendments ratified the alleged breach or superseded the 1977 contract would not affect the jurisdictional question. These are questions for the state courts to consider.

4. <u>Rate.</u> Subject to the approval of the Public Service Commission of Indiana:

. . .

> (b) . . . The Member agrees that the rate, from time to time, established by the Board of Directors of [Wabash Valley] shall be deemed to be substituted for the rate herein provided and agrees to pay for electric power and energy furnished by [Wabash Valley] to it hereunder after the effective date of any such revision at such revised rates; provided, however, that no such revision shall be effective *unless approved by applicable regulatory authorities* and the Administrator [of the Rural Electrification Administration].

S.A. 72-73 (emphasis added).

The parties disagree over the scope of the phrase "applicable regulatory authorities." Northeastern believes that "Subject to the approval of the Public Service Commission of Indiana" at the beginning of subsection 4 limits the applicable regulatory authority to the Indiana Commission. Wabash Valley believes that the term was intentionally left undefined to allow for a change in the regulator. Nevertheless, the parties agree that the Indiana Commission was the applicable regulatory authority when the contract was signed in 1977. As noted, state regulation was permissible because Wabash Valley still had REA debt.

In 2004, however, Wabash Valley decided to repay its REA debt early. Repaying the REA debt meant that

Wabash Valley would become subject to the exclusive regulatory jurisdiction of FERC. While Wabash Valley was considering the move to FERC regulation, Northeastern sent a letter to Wabash Valley to object, contending that a move to FERC would breach the 1977 contract. Wabash Valley disagreed and filed a rate schedule with FERC consisting of a formula rate tariff and the 1977 contract on April 30, 2004.[3] FERC then assumed exclusive jurisdiction over the rates, terms, and conditions of the wholesale electricity services provide by Wabash Valley. Federal law barred the Indiana Commission from

---

[3] Midwest ISO, another member of Wabash Valley, challenged this initial rate-filing in front of FERC. Midwest argued that the filing should not be accepted by FERC because the Michigan Commission (the alleged applicable regulatory authority under the Midwest-Wabash Valley contract) had not approved the filing. FERC rejected this objection on June 29, 2004. *Wabash Valley Power Ass'n, Inc.*, 107 FERC ¶ 61327 (June 29, 2004). In a decision that is not entirely clear, FERC concluded that the language of the 1977 Midwest-Wabash Valley contract conditioning rate changes on approval by the applicable regulatory authorities did not "preclude application of the proposed Formula Rate Tariff to Midwest under that contract." *Id.* at *3. It is unclear whether FERC concluded that this would not be a breach of the 1977 contract, or whether the contract was not a bar to regulation due to FERC's statutory authority. Any uncertainty about the grounds of FERC's decision does not matter for our jurisdictional inquiry because collateral estoppel and res judicata are affirmative defenses and do not provide a basis for federal jurisdiction. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478 (1998).

continuing to regulate the rates charged. See *United States v. Public Utilities Comm'n of Cal.*, 345 U.S. 295, 308 (1953) (observing that the Federal Power Act prohibits state regulation of wholesale electric rates within Federal Power Commission — now FERC — jurisdiction).

C. *The Dispute and Prior Proceedings*

Northeastern proceeded to purchase power from Wabash Valley until December 2010. On December 27, Northeastern sent Wabash Valley a notice of material breach based on the change in regulatory authority that took place in 2004 and demanded that Wabash Valley cure by restoring rate regulation by the Indiana Commission.[4]

Following failed negotiations, Wabash Valley filed a declaratory action with FERC seeking an order that: (1) FERC "has exclusive jurisdiction over the Commission-approved Formula Rate Tariff;" (2) any "changes to the rates paid by [Northeastern] under the Tariff . . . are subject to approval of the applicable regulatory authorities; and (3) the Commission is the applicable regulatory authority with jurisdiction over the rates [Northeastern] pays under the Tariff . . . ." *Wabash Valley Power Ass'n, Inc.*, 137 FERC ¶ 61148, at *1 (Nov. 21, 2011). In response, Northeastern agreed with the well-

---

[4] In its brief Northeastern also details several disputes it had with Wabash Valley from 2004 through 2010, but these are not material to the jurisdictional issue.

established law that FERC had jurisdiction over a filed tariff and argued that the only dispute was over whether Wabash Valley was in material breach of contract.

FERC granted Wabash Valley's petition and concluded that "since 2004, the Commission has had exclusive jurisdiction over the Tariff" and that any changes to the rates are subject to FERC approval. *Id*. at *5. Because Wabash Valley sought only a "jurisdictional declaration," FERC considered Northeastern's claim for breach of contract to be "beyond the scope" of the proceeding. *Id*. at *6. Northeastern then filed the present case in state court arguing that the change in regulatory authority was a material breach of the 1977 contract. Wabash Valley then removed to the federal district court, which issued its preliminary injunction and denied remand to state court.

II. *Subject Matter Jurisdiction*

The federal courts are courts of limited jurisdiction, and we have an obligation at each stage of the proceedings to ensure that we have subject matter jurisdiction over the dispute. Where, as here, a party challenges the removal of a case to federal court, we review *de novo* a district court's denial of a motion for remand, at least in the absence of disputed factual issues. *Chase v. Shop 'N Save Warehouse Foods, Inc*., 110 F.3d 424, 427 (7th Cir. 1997).

A case filed in state court may be removed to federal court only when the case originally could have been

filed in federal court. 28 U.S.C. § 1441(a). Because the parties here are both citizens of Indiana, diversity of citizenship is not present, and the propriety of removal depends on the existence of a federal question that could confer jurisdiction under 28 U.S.C. § 1331 or another statutory grant of jurisdiction. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). It is well established that such a federal question must be apparent on the face of the plaintiff's well-pleaded complaint. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936). Federal defenses to a well-pleaded complaint, such as preemption or preclusion, do not provide a basis for removal. See *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478 (1998).

Plaintiffs, however, may not avoid removal to federal court by omitting necessary federal questions from their complaints through artful pleading. While plaintiffs are entitled to omit federal claims from their complaints so as to avoid federal jurisdiction, they may not omit necessary federal elements of an included claim. See *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983). Put another way, a "plaintiff cannot frustrate a defendant's right to remove by pleading a case without reference to any federal law when the plaintiff's claim is necessarily federal." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722 (4th ed.). When a plaintiff omits from its pleadings federal questions that are necessary elements of a claim, courts will read the necessary federal elements into the complaint. See *Hays v. Cave*, 446 F.3d 712, 713 (7th Cir. 2006) ("What is true

is that if federal law creates the claim on which the plaintiff is suing, the fact that he has omitted from his complaint any reference to federal law will not defeat removal."). Similarly if federal law preempts all state causes of action in an area of law, under the complete preemption doctrine, we treat any state law claim as necessarily arising under federal law. See *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.")

With this background in mind, we now examine whether Northeastern's complaint arises under federal law to confer federal subject matter jurisdiction. First, we consider whether a substantial federal question exists to confer jurisdiction under 28 U.S.C. § 1331 or the grant of jurisdiction in the Federal Power Act, 16 U.S.C. § 825p. Second, we examine whether the Federal Power Act completely preempts state causes of action in the field of wholesale power regulation, bringing the complaint within the complete preemption doctrine.

A.  *Jurisdiction under 28 U.S.C. § 1331 or 16 U.S.C. § 825p*

Wabash Valley argues that there is federal jurisdiction because the complaint is based on a rate filed with FERC. This could confer "arising under" jurisdiction under 28 U.S.C. § 1331, or bring the case within the Federal Power Act's jurisdiction provision that provides for original and exclusive federal court jurisdiction

over "all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, [the Federal Power Act] or any rule, regulation, or order thereunder." 16 U.S.C. § 825p; *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 843, amended on denial of reh'g, 387 F.3d 966 (9th Cir. 2004) (finding § 825p provides a basis for federal court jurisdiction when federal question jurisdiction under § 1331 may be absent). We conclude that these two avenues do not confer jurisdiction because Northeastern's suit is not based on a filed rate or a direct challenge to a filed rate. No federal issues are necessary elements of Northeastern's claim.

Northeastern's complaint presents a claim for a declaratory judgment based on state contract law. The complaint thus presents a state law cause of action. We recognize that the nature of the cause of action does not always determine the existence of federal jurisdiction. See, *e.g.*, *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) (finding jurisdiction where decisive question of federal law was embedded in state law cause of action). Thus, we might still have federal question jurisdiction under section 1331 if the state law claims in the complaint "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities*." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (disavowing a "single, precise, all-embracing" test for federal question jurisdiction when federal issues are embedded in state law

causes of action, and finding federal question jurisdiction in quiet title action that depended on interpretation of federal tax law). We may also have jurisdiction if the state law cause of action falls within the scope of the Federal Power Act's grant of jurisdiction. 16 U.S.C. § 825p.

Wabash Valley contends that a substantial federal question necessarily exists because the suit is a challenge to a federally-filed tariff. Wabash Valley rests this argument on our previous decision holding that a state law action seeking to enforce or challenge terms of a federally-filed tariff arises under federal law. See *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488-89 (7th Cir. 1998). The reason behind this is straightforward. Tariffs filed with federal agencies are the equivalent of federal regulations issued by the agency. Any liability the plaintiff seeks to enforce necessarily arises under federal law because federal law created the liability. *Id.*; see also *Marcus v. AT&T Corp.*, 138 F.3d 46, 56 (2d Cir. 1998). If Northeastern's suit sought to challenge a filed tariff, the same reasoning would support jurisdiction under section 825p because it would be seeking to challenge the tariff — a regulation issued under the Federal Power Act. See *California ex rel. Lockyer*, 375 F.3d at 843.

Federal question jurisdiction does not exist, however, where there is a federally-filed tariff, but the complaint alleges a contract and breach of that contract that both predate the federal tariff. In the cases defendant Wabash Valley cites, the alleged wrongdoing was based on conduct that occurred after a federal tariff was submitted for regulation. See *Bastien v. AT&T Wireless Serv.*,

205 F.3d 983 (7th Cir. 2000); *Cahnmann*, 133 F.3d at 486-87; *City of Chanute v. Kansas Gas and Electric Co.*, No. 06-4096-JAR-JPO, 2007 WL 1041763 (D. Kan. 2007).

In *Cahnmann* we relied on precisely this point of timing to distinguish the iconic example of the well-pleaded complaint rule, *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908). In *Mottley*, the Mottleys sued the railroad to enforce a contract to give them free passes on the railroad for the rest of their lives (as partial settlement of an injury claim). The railroad's defense was that honoring its contract would violate a federal law and tariff prohibiting free transportation for anyone. The Supreme Court held that the federal courts lacked jurisdiction over the suit because the federal issues were all defenses to the Mottleys' contract claim. We reasoned in *Cahnmann* that because the contract in *Mottley* had been made before the federal tariff, the complaint in *Mottley* did not state a question of federal law. The "crucial difference" between *Cahnmann* and *Mottley* was that:

> The requirement that the carrier provide the service in question in accordance with tariffed terms didn't come into the law until after the contract between the railroad and the plaintiffs was made and went into effect, so the plaintiffs' claim couldn't have been thought an effort to enforce a tariff or an appeal to the regulatory commission's power to invalidate one. It was a state-law claim whether or not subsequently extinguished by the passage of the federal law putting the subject matter of the contract under tariff regulation.

133 F.3d at 489.

Like the breach of contract in *Mottley*, the alleged breach here is not based on a federally-filed tariff. Wabash Valley's alleged breach took place before the filing of a federal tariff, so the rights at issue cannot be said to arise out of the federal tariff. This means the complaint does not necessarily raise a federal question. For Northeastern to obtain its requested declaratory judgment it must show only that it has a valid contract and that Wabash Valley's submission to the regulatory jurisdiction of FERC breached the contract. Federal law is not at issue in either of these questions. The duty Northeastern claims Wabash Valley breached was not created by federal law or a filed tariff. And Northeastern does not seek to directly alter any duty or liability created by a filed tariff. We recognize that Wabash Valley will likely raise a number of federal issues in defense, but potential federal defenses are not necessary elements of the plaintiff's claim and do not provide a basis for jurisdiction under the well-pleaded complaint rule.

Wabash Valley contends that Northeastern's complaint asks the state court to invalidate a federal filed rate because Northeastern seeks a declaration that it has "no further obligation to purchase power from Wabash Valley under the FERC filed [1977 contract], the termination of which is a matter within FERC's exclusive jurisdiction." We disagree. We must resolve genuine doubts about removal in favor of state court jurisdiction, see *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009), and Wabash Valley, as the party asserting federal jurisdiction, bears the burden of establishing it, see *Boyd v. Phoenix Funding Corp.*, 366 F.3d

524, 529 (7th Cir. 2004). With these standards in mind, we read the complaint as seeking only a declaration of rights and obligations under the 1977 contract. Such a judgment may provide an important stepping stone toward modifying Northeastern's obligations under the federally-filed tariff in a separate filing with FERC, but the requested declaratory relief under the 1977 contract does not ask the state court to resolve the separate and federal question of the effect of this breach on Northeastern's obligations under the federally-filed tariff. If Northeastern prevails on the merits of its state law claim, it will need to make a subsequent filing with FERC to alter its obligations under the federal tariff, as its counsel acknowledged in oral argument. The complaint filed in state court, though, does not raise a federal question or challenge a federally-filed tariff, so there is no jurisdiction under section 1331 or under section 825p.

## B. *Complete Preemption*

Wabash Valley's next argument to support federal jurisdiction appears to rely on the complete preemption doctrine. Although it does not explicitly invoke the doctrine, Wabash Valley cites our decision in *Bastien v. AT&T Wireless Services* — in which we found jurisdiction over a contract claim based on complete preemption under a section of the Federal Communications Act — for the proposition that federal filed-rate questions support removal when the effect of granting relief would alter the regulation of the rates. 205 F.3d 983, 989 (7th Cir. 2000). This argument misreads *Bastien* and the filed-rate

doctrine. In *Bastien* we found jurisdiction based on complete preemption under the Federal Communications Act, not simply on the existence of a filed rate. This is critical because the filed-rate doctrine does not provide an independent basis for removal absent a statute with complete preemptive force.[5] We agree with nearly all of the other courts that have considered the question and conclude that the Federal Power Act does not completely preempt state law.[6] The complete preemption

---

[5]  In most cases challenging filed rates, a federal court will have jurisdiction under the theory of *Cahnmann* — that is, that a federal regulation forms the basis of the contractual relationship, so any claim necessarily arises under federal law.

[6]  See, *e.g.*, *Jeffrey Lake Dev., Inc. v. Cent. Nebraska Pub. Power & Irr. Dist.*, 4:11CV3112, 2011 WL 7122188, *6 n.4 (D. Neb. Nov. 23, 2011), report and recommendation adopted, 2012 WL 296144 (D. Neb. Feb. 1, 2012) ("there is no complete preemption under the FPA"); *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator*, 06-CV-0053-LRR, 2007 WL 1058561, *23 (N.D. Iowa Mar. 30, 2007), rev'd and remanded on other grounds, 561 F.3d 904 (8th Cir. 2009) ("neither in section 317 of the FPA, 16 U.S.C. § 825p, nor any other provision of the FPA does Congress manifest an intent to completely preempt state law in the field of electrical power regulation"); *Consol. Edison Co. of New York, Inc. v. Entergy Nuclear Indian Point 2*, 05-CV-0222 (RO), 2006 WL 929208, *2 (S.D.N.Y. Apr. 7, 2006) ("there is no evidence in the Federal Power Act of a congressional intent to create complete preemption"); *In re California Retail Natural Gas & Elec. Antitrust Litig.*, 170 F. Supp. 2d 1052, 1057-58 (D. Nev. 2001) (no complete preemption under Federal Power Act or

(continued...)

doctrine does not provide a basis for jurisdiction in this case.

### 1. *The Complete Preemption Doctrine*

The complete preemption doctrine refers to a limited set of cases in which a properly pled state law claim may

---

[6] (...continued)

Natural Gas Act); *Hendricks v. Dynegy Power Mktg.*, 160 F. Supp. 2d 1155, 1159 (S.D. Cal. 2001) ("fact that the Federal Power Act includes an exclusive jurisdiction provision does not mean that the entire field is preempted"); *Indeck Maine Energy, LLC v. ISO New England*, 167 F. Supp. 2d 675, 687 (D. Del. 2001) ("Federal Power Act does not completely preempt state law in the field of electrical power regulation because Congress has not manifested an intent to do so in the statute").

The only cases arguably to the contrary are *Franklin v. City of Alexandria*, CIV.A. 07-1011, 2007 WL 3023941 (W.D. La. Sept. 17, 2007), and *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586 (D. Md. 2007). *Smith*, however, concerned a plaintiff pleading an affirmative claim of preemption that sought injunctive relief, bringing the claim within the purview of *Shaw v. Delta Air Lines*, 463 U.S. 85 (1983). This basis for jurisdiction is distinct from the complete preemption doctrine and not applicable in this case. In *Franklin*, the court referred to the existence of complete preemption in passing; however, jurisdiction existed under section 825p, so the court's reference to complete preemption was an alternative holding without supportive reasoning. Moreover, the court did not attempt to reconcile the finding of complete preemption with the Supreme Court's decision in *Pan American Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656 (1961), discussed below.

be said to arise under federal law because Congress has effectively eliminated state law causes of action in the entire field. See *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.") The Supreme Court has recognized complete preemption under sections of the Employee Retirement Income Security Act, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), the Labor Management Relations Act, *Avco Corp. v. Machinists*, 390 U.S. 557 (1968), and the National Bank Act, *Anderson*, 539 U.S. 1. We have recognized complete preemption under a portion of the Federal Communications Act in *Bastien v. AT&T Wireless Services*, 205 F.3d 983 (7th Cir. 2000) (finding § 332(c)(3) of the Federal Communications Act completely preempts state law causes of action). Cf. *City of Chicago v. Comcast Cable Holdings*, 384 F.3d 901 (7th Cir. 2004) (holding § 542(b) of the Federal Communications Act does not create federal jurisdiction under complete preemption doctrine).

Complete preemption exists when federal law provides "the exclusive cause of action" for claims in a regulated area. *Anderson*, 539 U.S. at 9. Thus stated, the standard sounds admittedly circular, but there is no doubt that any further expansion of the doctrine beyond its origins with the Labor Management Relations Act requires a clear showing of Congressional intent to eliminate state law entirely. See *In re Repository Technologies*, 601 F.3d 710, 723 (7th Cir. 2010). The doctrine does not

apply when the Supreme Court has held that federal law does not completely occupy the substantive field of law at issue. In such a case the Supreme Court has already found such intent not to exist. See *Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009) (finding complete preemption doctrine inapplicable because Supreme Court held federal law did not completely occupy field of health insurance coverage for federal workers).

### 2. *Complete Preemption and the Federal Power Act*

Here, as in *Pollitt*, we find no complete preemption because, as the Supreme Court has recognized, federal law leaves a role for state law in wholesale power regulation. Of particular significance, the Supreme Court has concluded that federal law does not completely occupy the field of wholesale natural gas regulation — a regulatory scheme that is closely analogous to wholesale power regulation. See *Pan American Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656 (1961).

The case requires our close attention here. In *Pan American*, Cities Service — an intermediate purchaser of natural gas — brought suit against several natural gas wholesalers in state court to seek a refund for an alleged overpayment. The relevant facts were as follows. Cities Service entered into contracts with the wholesalers for purchase of natural gas at a price of less than 11 cents per thousand cubic feet. After the contract took effect, the State of Kansas issued an order fixing a minimum price

of 11 cents per thousand cubic feet. Because the mini-
mum price was higher than the contract price, Cities
Service paid the higher state-mandated price but
explicitly conditioned payment on its right to receive a
refund if the state order were later found invalid. While
this dispute was pending, the Supreme Court decided
*Phillips Petroleum v. State of Wisconsin*, 347 U.S. 672 (1954),
which held that all wholesale sales of natural gas in
interstate commerce — including the Cities Service con-
tracts — fell within the jurisdiction of the Federal Power
Commission. As a result of that decision, Cities Service
and the wholesalers filed their contracts with the Federal
Power Commission. Following the filing of the rate, the
Supreme Court held the Kansas minimum rate order
unconstitutional, and Cities Service brought a state law
action seeking a refund for excess payments. The whole-
salers contended that the Natural Gas Act — which in
relevant part is the same as the Federal Power Act —
stripped state courts of jurisdiction to hear such suits.

The Supreme Court disagreed. Even though there was
a filed rate that would likely need to be interpreted in
the suit, the Court found that the case did not assert any
right under the Natural Gas Act. *Pan American*, 366 U.S.
at 663-64. The suit therefore arose under state law, and
there was no federal question jurisdiction. Inconsistent
with complete preemption, the Court noted that the
existence of state court jurisdiction did not turn on "the
extent to which the Natural Gas Act reinforces or
abrogates the private contract rights" in controversy, but
rather on the source of the right asserted. *Id.* at 664. The
rights at issue did "not lose their character because it

[was] common knowledge that there exist[ed] a scheme of federal regulation of interstate transmission of natural gas." *Id.* at 663. The Supreme Court's recognition that state common law claims continued to exist alongside the federal regulatory scheme indicates that the Federal Power Act also does not completely preempt state law causes of action, for the relevant provisions of the Federal Power Act and the Natural Gas Act are "substantially identical." See *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981) (noting "established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes").

The exclusive jurisdiction provision in the Federal Power Act, 16 U.S.C. § 825p, does not alter our conclusion. The provision provides the federal district courts with exclusive original jurisdiction only over suits to enforce liabilities or duties created under the FPA. If the liability or duty at issue is not created by the FPA, it does not fall within the exclusive jurisdiction provision. Absent a showing of Congressional intent to preempt *all* state law claims in the area of wholesale power regulation, there is no complete preemption. See *Hendricks v. Dynegy Power Mktg., Inc.*, 160 F. Supp. 2d 1155, 1159 (S.D. Cal. 2001) ("fact that the Federal Power Act includes an exclusive jurisdiction provision does not mean that the entire field is preempted"). To read the exclusive jurisdiction provision to cover more than the limits of its text would be to disregard Congress's intent.

### 3. *Complete Preemption and the Filed-Rate Doctrine*

We also reject the argument that the filed-rate doctrine itself completely preempts state law. Citing *Bastien v. AT&T Wireless Services*, Wabash Valley appears to suggest that the filed-rate doctrine brings this case within the federal courts' jurisdiction. Wabash Valley cites *Bastien* for the proposition that, "to determine the presence of a federal filed-rate question supporting removal," we ask what the nature of the claim is and what the effect of granting the relief would be. The argument misses the critical fact that in *Bastien* we found the Federal Communications Act to completely preempt state law. Our finding of complete preemption was a necessary prerequisite to our determination that federal jurisdiction existed.

The filed-rate doctrine does not on its own eliminate state law causes of action. Plaintiffs, for example, may still bring breach of contract claims in state court seeking to enforce a contractually agreed wholesale rate that is within the bounds of the federal tariff, as in *Pan American*. The filed-rate doctrine prevents courts from second-guessing the reasonableness of terms in a federally-filed rate, but it does not divest state courts of jurisdiction to hear all cases involving wholesale power contracts.

The confusion may arise from the faulty premise that the filed-rate doctrine is a jurisdictional doctrine as opposed to a substantive one. This is understandable because many cases invoking the filed-rate doctrine concern challenges based on federal tariffs. As a result, decisions that find jurisdiction on the basis of a federal

tariff that creates the liability in the suit and that also find a suit preempted by the filed-rate doctrine may be over-read to suggest that the filed-rate doctrine creates the source of jurisdiction through complete preemption. In these cases, however, jurisdiction is based on rights created by a federal tariff itself, see, *e.g.*, *Cahnmann*, 133 F.3d at 488-89, not by the fact that the suit pertains to the same subject matter as a filed rate. As discussed above, the necessary implication of the holding of *Pan American* that federal courts lack jurisdiction over state law contract claims seeking refunds for overpayments is that the filed-rate doctrine does not completely preempt state law. It is therefore properly treated as a federal defense rather than an affirmative basis for jurisdiction.

### 4.   *FERC Practice*

Finally, we find further support for our holding that the Federal Power Act does not completely preempt state law causes of action in FERC's actual practices. FERC itself recognizes a role for state contract law in adjudicating contract disputes involving federal tariffs. See *Portland General Electric Co.*, 72 FERC ¶ 61009, at *3 (July 5, 1995) ("our jurisdiction to settle disputes over the meaning of rate schedules does not as a matter of law preclude state courts from entertaining contract litiga-tion . . . ."); *Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61175, at *3 (May 18, 1979) (discussing when FERC will exercise primary jurisdiction over contract disputes that would otherwise be subject to state court jurisdiction); see also *PPL Montana, LLC*, 96 FERC ¶ 61313 (Sept. 14,

2001) (deferring to state courts to resolve power contract disputes). If the Federal Power Act completely pre-empted state law causes of action, we would not expect FERC — the agency that administers the statute — to recognize any role for state court adjudication of contract disputes involving filed tariffs.

*Portland General Electric Co.* is particularly instructive. In that case, Edison filed a complaint against Portland General Electric in an Oregon state court alleging that under Oregon law, Portland General Electric was in default on a Power Agreement — which was also part of a filed rate — as a result of a nuclear plant closure. Portland General Electric then filed a complaint with FERC seeking a declaratory order that FERC was the only body with jurisdiction to resolve the contract dispute. FERC disagreed. Because the complaint in Oregon state court did not "challenge the reasonableness of any rate on file with FERC, or make claims based on the FPA," the state court action was appropriate. *Portland General Electric*, 72 FERC ¶ 61009, at *1. FERC made clear, however, that any decision to terminate the contract following state court adjudication of the contract law question would need to be filed with FERC itself. *Id.*; 18 C.F.R. § 35.15.

In terms of the jurisdictional issue, the facts in *Portland General Electric* are virtually indistinguishable from the facts of this case. Northeastern has filed a complaint that does not assert any claims based on the FPA and does not challenge the reasonableness of a filed rate. Northeastern simply seeks the interpretation of a contract term to determine whether Wabash Valley

breached the contract by switching from state regulation to FERC regulation. And like Edison, Northeastern acknowledged at argument that if it prevails in state court, it will need to file a notice with FERC before terminating performance under the federally-filed rate schedule, providing FERC with an opportunity to address such remedial questions. See, *e.g.*, *Jersey Cent. Power & Light Co.*, 33 FERC ¶ 61071 (Oct. 25, 1985) (declining to permit withdrawal of filed rate schedule). Since Northeastern is seeking only a declaration of state contract rights, a declaration that cannot obligate FERC to modify Northeastern's obligations under the federal tariff, we recognize that it is not at all clear whether state courts could award meaningful relief to Northeastern. Nevertheless, FERC's practice in cases like *Portland General Electric* suggests that FERC finds state court contract interpretation helpful in resolving such disputes when they eventually come before FERC.

III. *Conclusion*

Northeastern has pled a state law breach of contract claim that does not arise under federal law. The claim does not seek to enforce or challenge any duty or liability created by a federally-filed tariff, nor does the claim necessarily arise under federal law through complete preemption. In light of this conclusion, we also of course reject Wabash Valley's request for sanctions on the theory that the appeal was frivolous. Because the district court lacked jurisdiction to issue its preliminary

injunction, we VACATE the preliminary injunction and REMAND the case so that the district court may remand it to state court.